NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EDWARD FORCHION and NJWEEDMAN'S JOINT LLC,<br><br>Plaintiffs,<br><br>v.<br><br>REED GUSCIORA, *in his official capacity as Mayor of the City of Trenton*,<br><br>Defendant. | Civil Action No. 24-10052 (RK) (JBD)<br><br>**OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon Defendant Reed Gusciora's ("Gusciora" or "Defendant") Motion to Dismiss (ECF No. 19, "Mot.") the Amended Complaint (ECF No. 5, "Compl.") filed by Plaintiffs Edward Forchion ("Forchion") and NJWeedman's Joint LLC ("The Joint") (collectively "Plaintiffs"). Plaintiffs filed a response in opposition (ECF No. 20, "Opp.") and Defendant filed a reply (ECF No. 21, "Rep."). The Court has considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendant's Motion is **DENIED**.

**I.   BACKGROUND**

This case arises out of a years-long dispute between unlikely neighbors that has morphed into a constitutional challenge. The Court accepts the following allegations as true and in the light most favorable to the Plaintiffs, as is required on the present motion. *See Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992). The Joint is a restaurant founded and operated by Plaintiff Forchion, and is located at 322 East State Street in Trenton, New Jersey. (*See* Compl. ¶¶ 3–4, 7,

9.) In addition to owning The Joint and some other businesses (*id.* at ¶¶ 7–8), Forchion is a "long-time cannabis activist" who has purportedly "authored many news articles, appeared in various television programs and documentaries" and "participated in parades with the NJ Weedman Van, a colorful vehicle with messages encouraging the full legalization of marijuana and civil disobedience against laws he considers unjust." (*Id.* ¶ 6.) The Joint also "display[s] colorful signs encouraging the legalization of marijuana." (*Id.* ¶ 8.) Ironically, The Joint sits directly across the street from Trenton City Hall, which is located at 319 East State Street. (*See id.* ¶ 9.) Throughout the Complaint, Plaintiffs take issue with actions of the Trenton Police Department and thus brings suit against Defendant in his official capacity as Mayor of Trenton for his role in "manag[ing], direct[ing], and control[ling]" the Trenton Police Department. (*Id.* ¶ 5.)[1]

According to Forchion, he has been pursuing a cannabis license for years but has been unsuccessful so far. (*See id.* ¶¶ 2, 24, 25.) In late April 2024, Forchion started "vociferously complaining about his cannabis license" by projecting a "Batman-like signal" on the side of Trenton City Hall across the street. (*Id.* ¶ 24.) The projection is a circle that appears like an official government seal: the outer ring of the circle reads "Seal of the City of Trenton." The inside proclaims: "Our City Government SUCKS." (*Id.* at 10.) Plaintiffs' Amended Complaint includes a picture, reproduced below:

---

[1] In his Motion to Dismiss, Defendant captions this case as being against both Gusciora and the City of Trenton, and purports to represent both entities throughout the Motion. (*See, e.g.*, Mot. at 1.)

(*Id.* at 10, 13.) As is evident from the photograph, the seal spans nearly the entire height of the building, and the light from the projection streams into multiple windows. Forchion acknowledges he is a "thorn in the city's side." (*Id.* at 4.)

Forchion alleges that "nearly immediately" after he started projecting the seal onto City Hall, he started being "harass[ed]" by the Trenton Police Department and the Trenton city government. (*See id.* ¶ 25.) The police began showing up to The Joint after 2:00 a.m. and shutting it down, citing violations of Trenton Ordinance § 146-22(d), which prohibits most (but not all) businesses from operating between the hours of 2:00 a.m. and 6:00 a.m. (*See id.* at ¶¶ 25–26, 32.) This police action, according to Plaintiffs, is suspect for a variety of reasons: *first*, Plaintiffs had not been cited for any violation of this ordinance since 2020 until Forchion started projecting on City Hall (*Id.* ¶ 24); *second*, The Joint should have been excepted from § 146-22(d) because it falls under § 146-23(B)'s twenty-four hour diner exemption (*Id.* ¶¶ 28–29); *third*, The Joint was inconsistently cited for violations of § 146-22(d) (Compl. ¶ 26); and *fourth*, the City permitted other similar establishments to remain open until "at least 6 a.m.," despite their ostensibly not being twenty-four-hour diners (*see id.* ¶ 32). In an effort to ensure compliance with the relevant ordinances, Forchion attempted to amend his restaurant's operating license to remove any ambiguity that he was operating a twenty-four-hour diner. (*Id.* ¶ 28.) However, Plaintiffs allege, the City refused to approve this "simple amendment" and has no guidelines governing its process to do so. (*Id.* ¶ 29.)

In addition to the citations pursuant to § 146-22(d), Plaintiffs allege that the Trenton City Attorney told Forchion that if he continued to project a message on City Hall, "the city would revoke Mr. Forchion's City Resolution regarding his application for his Cannabis license." (*Id.* ¶¶

3

27, 30.) Furthermore, Plaintiffs allege that Defendant has interfered with his business by permitting a marijuana dispensary only a few feet away from The Joint. (*Id.* ¶ 34.)

Plaintiffs filed the initial Complaint commencing this action on October 24, 2024. (ECF No. 1.) Shortly thereafter, Plaintiffs allege, the City "suddenly" claimed that The Joint was actually *exempt* from § 146-22(d) because it operates in an "entertainment zone" wherein businesses are allowed to be open for twenty-four hours per day. (*Id.* ¶ 33); *see also* § 1463-23(H) (allowing 24-hour operation for businesses "[l]ocated within the City's established Entertainment District"). According to Plaintiffs, no one knows the supposed geographical confines of the Entertainment District. (Compl. ¶ 33.)

Plaintiffs bring one cognizable cause of action for retaliation in violation of the First Amendment, pursuant to 42 U.S.C. § 1983.[2] (*Id.* at 14–16.) Plaintiffs seek compensatory damages, punitive damages, special damages of no less than $500,000, attorneys fees, and other fees and costs, as well as damages for loss of earnings and reduction in earning capacity caused by Defendant's repeated police presence at The Joint. (*Id.* at 16–17.)

Plaintiffs filed their Amended Complaint on January 26, 2025. (Compl.) On May 22, Defendant filed his Motion to Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (*See* Mot.) Plaintiffs opposed (*see* Opp.) and Defendant replied (*see* Rep.). The Motion is now ripe for review.

---

[2] Plaintiffs also purport to bring a cause of action for "attorney fees" but this is not a standalone cause of action. *See, e.g., Harriott v. Bank of Am. Home Loans*, No. 12-00457, 2013 WL 4812461, at *7 (M.D. Pa. Sept. 9, 2013) (citing Fed. R. Civ. P. 54(d)(2)(A)); *see also Benjamin v. E. Orange Police Dep't*, 937 F. Supp. 2d 582, 598–99 (D.N.J. 2013) (citing *Moor v. Alameda Cnty.*, 411 U.S. 693, 702 (1973)). This pleading deficiency is "apparent from the face of the complaint" and the Court thus addresses it *sua sponte*. *Jennings-Fowler v. City of Scranton*, 680 F. App'x 112, 119 (3d Cir. 2017). Accordingly, Count II of Plaintiffs' Amended Complaint is **DISMISSED** as a matter of law. To the extent Plaintiffs still seek attorney's fees, they can move for same under Rule 54 at the appropriate time.

## II. LEGAL STANDARD

For a complaint to survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, it must contain "sufficient factual matter" to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023). The court accepts all allegations in the complaint as true and gives the plaintiff "the benefit of every favorable inference to be drawn therefrom." *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

In deciding a Rule 12(b)(6) motion, the court can only consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). A court may also consider any document "integral to or explicitly relied upon in the complaint" when ruling on a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

## III. DISCUSSION

At this juncture, Defendant bears the burden of persuasion. *See Potter v. Cozen & O'Connor*, 46 F.4th 148, 155 (3d Cir. 2022) ("[T]he defendant bringing a Rule 12(b)(6) motion must show that the plaintiff has not stated a claim."); *Gould Electronics, Inc v. United States*, 220

F.3d 169, 178 (3d Cir. 2000) ("In a rule 12(b)(6) motion . . . the defendant bears the burden of showing no claim has been stated."). In an attempt to meet his burden here, Defendant raises only two arguments in his Motion to Dismiss: *first*, that Plaintiffs have not alleged engaging in any constitutionally protected conduct because they are harassing Defendant, and *second*, that Plaintiffs are operating an illegal cannabis business and therefore any ruling in Plaintiffs' favor somehow contributes to illegal activity. (Mot. at 7–8.) At this early juncture and on the limited record currently before the Court, neither of these narrow arguments is persuasive.

It is axiomatic that the First Amendment forbids public officials from subjecting individuals to "retaliatory action" for engaging in protected speech. *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 474 (2022) (citation omitted); *Bartley v. Taylor*, 25 F. Supp. 3d 521, 529 (M.D. Pa. 2014) ("The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation by a public official for the exercise of that right." (quotation omitted)). "A plaintiff claiming retaliation must allege '(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action.'" *Starnes v. Butler Cnty. Ct. of Common Pleas, 50th Judicial Dist.*, 971 F.3d 416, 429 (3d Cir. 2020) (quoting *Mirabella v. Villard*, 853 F.3d 641, 649 (3d Cir. 2017)).

Defendant moves to dismiss Plaintiffs' claims because the conduct at issue—projecting an image that says "City Government SUCKS" onto the façade of Trenton City Hall—is harassment and therefore not constitutionally protected.[3] (Mot. at 4.) Defendant argues that Plaintiffs'

---

[3] Defendant's Motion does not raise any arguments with respect to the other two elements of a First Amendment Retaliation claim. Even if it did, the Court is skeptical that either would be a basis for dismissal. *First*, Plaintiffs have put forth a myriad of alleged retaliatory actions taken by Defendant including (1) inconsistently citing The Joint for ordinance violations; (2) treating it differently than other similar

6

projection is a "harassing and threatening comment[]" which is not protected speech, specifically because the conduct at issue meets the elements of New Jersey's criminal harassment statute. (*Id.*); *see* N.J. Stat. Ann. § 2C:33-4. However, for the reasons discussed below, Plaintiffs' alleged conduct does not fall within the ambit of New Jersey's harassment statute and is not the type of harassing speech or conduct that goes unprotected by the First Amendment.

"Most speech is protected by the First Amendment." *United States Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 928 (3d Cir. 1990) (citing *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 503 (1984) (there are "few classes of unprotected speech.")). The "right to criticize the government and government officials" is among the classes of protected speech. *New Jersey Chinese Community Center v. McAleer*, No. 21-8320, 2022 WL 3403297, at *8 (D.N.J. Aug. 15, 2022) (quoting *Trulock v. Freeh*, 275 F.3d 391, 404 (4th Cir. 2001)). Indeed, "the '[f]reedom to criticize public officials and expose their wrongdoing is at the core of First Amendment values, even if the conduct is motivated by personal pique or resentment.'" *Taggart v. United States Dept' of Just.*, No. 16-4040, 2017 WL 319062, at *12 (E.D. Pa. Jan. 20, 2017) (quoting *Barrett v. Harrington*, 130 F.3d 246, 263 (6th Cir. 1997)).

Furthermore, as the Third Circuit has held, "[t]here is no categorical 'harassment exception' to the First Amendment's free speech clause." *Saxe v. State College Area School Dist.*, 240 F.3d 200, 204 (3d Cir. 2001). "On the contrary, 'the free speech clause protects a wide variety of speech that listeners may consider deeply offensive[,]'" or may cause a person to be annoyed,

---

establishments; and (3) threatening approval of Forchion's cannabis application. (Compl. ¶¶ 25–27, 29, 32); *see Conard v. Pennsylvania State Police*, 902 F.3d 178, 183 (3d Cir. 2018) (finding a retaliatory action based on "a threat, coercion, or intimidation intimating that punishment, sanction, or adverse regulatory action would follow" (quotation omitted)). *Second*, the close timing of Defendant's purported retaliatory actions which are alleged to have occurred "nearly immediately" after Plaintiffs' alleged conduct provides an indicia of support for a causal link between the two parties' actions. (Compl. ¶¶ 2, 25, 27); *see Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

fearful, or timid. *United States v. Yung*, 37 F.4th 70, 78 (3d Cir. 2022) (quoting *Saxe*, 240 F.3d at 206). The type of speech that is *not* protected is extremely circumscribed, limited primarily to "the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words." *Gilles v. Davis*, 427 F.3d 197, 204 (3d Cir. 2005) (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942)).

Defendant has not met his burden to persuade the Court that Plaintiffs' alleged actions were harassment outside of the First Amendment's protections. The allegations amount to Plaintiffs' expression of their dissatisfaction with the local government on a government building, where elected officials and others who serve the public interest will see it. The language Plaintiffs use—which is perhaps crass and discourteous—is neither lewd, obscene, nor libelous. Nor does it advocate for violence. Government employees and officials may very well find the projection annoying or even insulting, but such speech is protected. *See J.S. ex rel. Snyder v. Blue Mtn. Sch. Dist.*, 650 F.3d 915, 936 (3d Cir. 2011) (Smith, J., concurring) (stating that the First Amendment protects speech that is "disruptive, offensive, vulgar, or insulting" (citing, *inter alia*, *Texas v. Johnson*, 491 U.S. 397, 408–10 (1989))). Although Defendant classifies Plaintiffs' conduct as "harassment," even harassment may be protected by the First Amendment. *See Yung*, 37 F.4th at 78 (finding that criminalizing, *inter alia*, "[f]illing a city councilman's voicemail box with complaints about his vote on a controversial municipal ordinance" "would collide with the First Amendment"); *Saxe*, 240 F.3d at 204 ("There is no categorical 'harassment exception' to the First Amendment's free speech clause."). Additionally, while Defendant asserts that "threatening

comments are not protected speech," (Mot. at 4), it is not clear to the Court that the statement "Our City Government SUCKS" contains any threat.

Defendant's citation to the New Jersey harassment statute does not alter the First Amendment analysis. Under this statute, a person "commits a petty disorderly persons offense if, with [the] purpose to harass another, he: (a) makes, or causes to be made, one or more communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;" or "(c) engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy another such other person." N.J. Stat. Ann. § 2C:33-4(a), (c).[4] In order to ensure that this statute complies with the First Amendment, the New Jersey Supreme Court mandates an additional requirement under each subsection: for subsection (a), the mode of communicative harassment must be "invasive of the recipient's privacy." *Cesare v. Cesare*, 713 A.2d 390, 404 (N.J. 1998) (stating that the additional element is added "for constitutional reasons"); *accord State v. Higginbotham*, 313 A.3d 847, 862 (N.J. 2024). For subsection (c) "repeated acts to 'alarm' and 'seriously annoy' must be read as encompassing only repeated communications directed at a person that reasonably put that person in fear for his safety or security or that intolerably interfere with that person's reasonable expectation of privacy." *State v. Burkert*, 174 A.3d 987, 990 (N.J. 2017) (same).

Not only are there no allegations that Forchion has been charged—let alone convicted—under this statute, Plaintiffs' alleged actions do not satisfy the statute's elements. The mere projection of a statement of opposition to the government on City Hall cannot be interpreted to

---

[4] Subsection (b) applies when a person "subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so." N.J. Stat. Ann. § 2C:33-4(b). Defendant does not argue that this subsection applies.

reasonably put any government employee or official "in fear for his safety or security," or otherwise "intolerably interfere" with an expectation of privacy. *See id.* Defendant's only factual basis for the harassing effect of Plaintiffs' light projection is that "the city was forced to install covers" on the windows where light from the projection enters the building. (*See* Mot. at 5–6.) Defendant's citations to two cases where harassment was not protected by the First Amendment are inapposite and plainly distinct. (*See id.* at 4–5 (citing *Yung*, 37 F.4th 70, and *State v. Hoffman*, 695 A.2d 236 (N.J. 1997))).[5]

There may be, of course, other reasons that Plaintiffs' conduct is not protected by the First Amendment, but Defendant has not advanced any and "courts generally should not address legal issues that the parties have not developed through proper briefing." *See Centennial Plaza Prop, LLC v. Trane U.S., Inc.*, 771 F. Supp. 3d 481, 486 n.9 (D.N.J. 2025) (quoting *Sw. Pa. Growth All. v. Browner*, 121 F.3d 106, 122 (3d Cir. 2022)). Were the Court to dismiss the Amended Complaint on grounds not raised by Defendant, it would deprive Plaintiffs the "fair opportunity to address the issue before deciding it." *Dickerson v. Desimone, Inc.*, 400 F. App'x 636, 638 (3d Cir. 2010); *see also Jennings-Fowler v. City of Scranton*, 680 F. App'x 112, 119 (3d Cir. 2017) ("[A]s a general proposition, *sua sponte* dismissal is inappropriate unless the basis is apparent from the face of the complaint." (citation omitted)).

Notwithstanding, the Court is mindful that the First Amendment does not prohibit Trenton's government from regulating the time, place, or manner of speech on its premises. *See*

---

[5] *Yung* concerned a scorned law school applicant who "struck back" against his interviewer when he "launched a cyber campaign[,] created fake obituaries for the interviewer's wife and son; [created] social media profiles littered with Ku Klux Klan content in the interviewer's name; and [wrote] blog posts as the interviewer, bragging about raping women, a boy, and an eight-year-old-girl." 37 F.4th at 74. *Hoffman* is about the fall-out from years of domestic abuse that ended in divorce, and the defendant's violation of his restraining order by harassing his ex-wife and mailing her a support order, torn to shreds. 695 A.2d at 573. To equate Plaintiffs' political projection on a government building with an online smear campaign targeting a specific individual or the violation of a restraining order precipitated by domestic violence is specious.

10

*Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 799–800 (1985) ("Nothing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities.") Indeed, Trenton Ordinance § 53—which no party has cited or referenced in this case—requires a permit for "expressive activity" in the City Hall Atrium and adjoining plaza. *See* Trenton Ordinance § 53-2. To be clear, Plaintiffs do not allege that they were ever cited for a violation of this statute, Defendant does not argue that Plaintiffs ever transgressed this particular ordinance, and the Court takes no position as to whether it applies to Plaintiffs' conduct here.

As a final ground to dismiss the Complaint *in toto*, Defendant argues that because "Plaintiffs are selling cannabis illegally and now seek assistance from this Honorable Court in commission of their crime." (Mot. at 7–8.) In support of this contention, Defendant cites to a nineteenth century decision of the United States Supreme Court and the maxim that "*ex dolo malo non oritur acito*," or "[n]o court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act." *See Pullman's Palace-Car Co. v. Central Transp. Co.*, 171 U.S. 138, 151 (1898). This doctrine, seldom invoked this century, appears to typically apply in the context of contracts, allowing for the avoidance of a contract based on an illegal act. *See, e.g.*, *McMullen v. Hoffman*, 174 U.S. 639, 654 (1899) ("[N]o court will lend its assistance in any way towards carrying out the terms of an illegal contract."); *Pittsburgh Const. Co. v. West Side Belt R.R. Co.*, 151 F. 125, 130 (W.D. Pa. 1907) ("The law will not enforce an award based on an illegal contract."); *Ewell v. Daggs*, 108 U.S. 143, 149 (1883); *Coppell v. Hall*, 74 U.S. 542, 558 (1868).

Nevertheless, the Court is strained to understand how Plaintiffs' case here is "in furtherance of an illegal cannabis operation." (Mot. at 8.) Although Forchion is a marijuana activist and is in

the process of attempting to obtain a cannabis license, there is no allegation in the record that the City is attempting to close his business for illegally selling marijuana; only for operating past 2:00 a.m. In short, Defendant fails to explain how the cited doctrine applies to this matter.

Accordingly, having found that neither of Defendant's arguments necessitate dismissal, Defendant's Motion to Dismiss Plaintiffs' Amended Complaint is **DENIED**.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 19) is **DENIED**. Plaintiffs' Complaint is **DISMISSED IN PART** as to Count II only. An appropriate Order follows.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: July 14, 2025